oral argument not to exceed 15 minutes per side, Ms. Salinas, supervising attorney for the appellate. Good morning again. Good morning. Good to see you. Good to see you as well. May it please the court, I'm Melissa Salinas and I'm the supervising attorney for the student attorneys from the University of Michigan Law School who will be presenting the case today. Thank you for allowing them to argue. Good morning. Good morning. Good morning. May it please the court, my name is Walter Aguilar. I represent Mr. Samuel Hernandez, the defendant and appellant in this case. I would like to reserve three minutes for rebuttal. Very well. Thank you. This court should reverse the district court's denial of the motion to suppress for two reasons. One, the officers did not have reasonable suspicion, let alone probable cause that Mr. Hernandez changed his residence. And two, because the officers did not have reasonable suspicion nor probable cause, the parolee search of Mr. Hernandez's mother's residence violated the Fourth Amendment. This is no ordinary parolee search case. This court has left open the question regarding the proper standard of review when connecting a parolee to the premises of a third-party residence. Whether it's reasonable suspicion or probable cause, the government does not meet either standard. First, the officers did not have reasonable suspicion, let alone probable cause, that Mr. Hernandez changed his residence because they knew that he was still living at his reported address on North Magnolia Avenue. They knew this because they surveilled him for a months-long investigation. They had electronic location data for 90 days. They imposed a curfew on him. He did not violate that curfew once. You brought the standard of review as an appropriate issue. Do we have any published decisions on this issue, what the standard of review should be? No. I'm sorry, what the applicable standard should be for the search? Right, whether it's reasonable suspicion or probable cause. Yeah, this court has not answered that question. There have been cases where the court has not needed to answer that question. For example, in United States v. Payne, the court didn't need to answer that question because there was probable cause anyway. Here there is no probable cause anyway. Does it make sense to answer it in this case, do you think? Would it be helpful, do you think, to litigants? Yes, it would be helpful, Your Honor, here. You know, this is not one of those situations like in Payne, for example, where there's probable cause and Mr. Hernandez changed his residence. That's supported by United States v. Granberry, a case that the government cites approvingly in the response to the 28-J letter. And, you know, this probable cause standard is important for three reasons. One, the potential constitutional violations of third parties necessitates a more rigorous standard. Otherwise, and this is point number two. Are you able to assert the rights of third parties? No, Your Honor. I don't believe you're able to. So why should that be a factor here? Normally, defendants who are under supervised release, the standard is reasonable suspicion rather than probable cause because their rights are limited by the supervised release itself. And why should we elevate it to probable cause here? Sure, Your Honor. Well, this case is all about residency, and this is supported by the . . . About residency. Isn't it about the Fourth Amendment? Yes, Your Honor. Does a residency matter that much? I mean, if you have an expectation of privacy, you don't have to own the property, do you? Correct, yes. So you can have a reasonable expectation of privacy without . . . Isn't that the key as opposed to whether you own the property? Well, in the supervised release agreement, it says, quote, you must submit your property residence. And so the question here is, is this your residence? Was this Mr. Hernandez's residence? And it was not. And again, whether it's reasonable suspicion or probable cause, the government does not meet that. So that is the first question here, and it's supported not just by the supervised release agreement itself, you know, is this your residence? It's also supported by the probation officer's sworn testimony where he stated that he didn't think anything else was going on here but a residency violation. And so that is the first question here, is this your residence? And that's explicitly outlined in the supervised release agreement itself. Would this be an appropriate case for us to adopt the Fourth Circuit standard? I know you've cited the supplemental case from the Fourth Circuit, but you didn't raise this below. You argued reasonable suspicion the whole time, right? So, one, we might say that the argument is forfeited in this court but also in the lower court. So you'd be on plain error review here? Your Honor, we did not argue in the briefs that the appropriate standard is reasonable suspicion. We went through the different conditions and why reasonable suspicion was not met. But regarding whether the standard review is reasonable suspicion or probable cause, that was not conceded in the arguments? But it wasn't raised. I mean, sure, maybe it wasn't conceded, but this question about should we adopt a new standard wasn't raised below. You didn't present it to the district court that probable cause was needed. And so even if we were to consider it here, you'd be on plain error review. Do you agree with that? Well, the government contends that we abandon this argument that we invited error, even if, you know, this court agrees that we invited any error. This court has also recognized that invited error does not foreclose relief when the interests of justice demand otherwise. And here, it's not just the constitutional violations of Mr. Hernandez but of his mother, of, you know, third parties. And so regarding whether this is the case for that, again, this isn't a case like in Payne where there is probable cause, you know, where you can avoid this question. I mean, the other avenue here is like in the United States v. Henry where this court deemed that there was an even reasonable suspicion. And so there are different paths here. But, you know, regarding when this court has not needed to answer the question, this case complicates that where. So why isn't there probable cause to believe that drugs would be found in the residence or even to believe that he lived there? I mean, didn't your client call the police once and say, there's this woman in my home that I'd like to get, I'd like to have her leave? That is correct, Your Honor. So telling the police that you live there might give them probable cause to believe you live there? Not necessarily. It should certainly be part of the totality of the circumstances analysis. But it's important to put this one-time statement that was made in February of 2024 in context. He had just been assaulted by this person who was later arrested for such assault, who was breaking things in the home that he was repairing. And so the officers did not – Repairing it at 2 o'clock in the morning? The specific time is not on the record, I don't believe. But, again, this one time – It was in the middle of the night, though. You don't – It was late at night. It was late at night. That is correct, Your Honor. There was also something about a gun. Was it there at the residence? Yes. Okay, so doesn't that establish reasonable suspicion or probable cause that he's violating the ban against firearms for his terms of supervised release? That does relate to the ban of firearms. But, again, Your Honor, the question is, was this his residence? That's the first question. I just don't know if we have to establish that he has a deed to the residence. I agree with you that the conditions say that warrantless searches are allowed a person's property, house, and paper. But to say – well, first of all, this might be – he might have a property interest if he's actually running the house or whatever. I just don't know if he's going to have to have a legal title in the house for those conditions to apply. That's all. It's not that he needs a legal title necessarily. Yeah, I guess that's what you're arguing, right? We're arguing whether this was his residence. Okay, well, don't you think there's enough evidence that perhaps it is his residence? I mean, he's there a lot. Yes, he is. He does spend time there during the day. And there's a difference between living at a residence and visiting a residence. And here, again, he was repairing his home in the United States v. Henry. And he's there at 2 in the morning, and he's there a lot. Isn't there some evidence that his dog was there? That was discovered after the search, Your Honor. The officers did not ever – that was not in the officers' minds. Okay, I did not know that was post-search. Yes. Can I ask a different way? What more facts do we need here to demonstrate residency if we thought that was important? What facts are missing here? What more do we need? Put a few facts that are not helpful to your client. Sure, Your Honor. Here, there is no evidence that Mr. Hernandez ever slept at this unapproved address on Mellon Avenue, that he was ever there, that he was an overnight guest or anything like that. And I guess facts I would point to the United States v. Payne. And in that case, for example, there, the defendant was on the lease agreement. He was driving cars associated with that residence. He was never seen at the approved address. And so here, there's evidence that Mr. Hernandez was no longer living at his approved address on North Magnolia. And so that wasn't considered here in the totality of the circumstances analysis. Yeah, and I would point to the United States v. Granberry as well. This is a case that the government cites approvingly. And the response to the 28J letter, where probable cause is never found unless there is a substantial and affirmative basis that the parolee is no longer living at the reported address. And in that case as well, the court recognizes that a parolee's presence at a residence, even if frequent, does not establish probable cause that the parolee lives there. Again, the court there distinguishes between evidence that a parolee lived at a residence and between evidence that a parolee visited a residence. And so here, whether it's reasonable suspicion of probable cause, the government does not meet that standard. Quite frankly, it wasn't just that Mr. Hernandez was sleeping and staying at his night for just a few days or a few weeks. This was for three months, for 90 days. And there is no evidence in the record that he violated his curfew. And so, again, the question here is on whether this was his residence. And it was not his residence. So if it's not his residence, why does he get to object to the search? What expectation of privacy does he have there? Yes, so Mr. Hernandez still has standing. He still has a reasonable expectation of privacy. This court has recognized that that exists when there is a familial relationship here with his mother. Just because you have a family member living somewhere isn't enough to show you have an expectation of privacy. If you have an expectation of privacy in every family member I can find where they live, that can't be enough. He also had a key where he used to make repairs at the home. And so this court has recognized that in those cases there is reasonable expectation of privacy, stored items there that were needed for his repair. Repair people? If you're doing a project at someone's home, you're the contractor, do you have an expectation of privacy there? Yes, Your Honor. When you consider not just the familial relationship, but that he was allowed access here, that he had the key, this court has recognized that in those cases there is a reasonable expectation of privacy. Again, you can have standing without establishing residence. It's like a fine line. Yes, what are these cases? What's your best case that having a key to one's home, you're a contractor, you come over during the day to work there, that that gives you an expectation of privacy in someone else's home? Yeah, so regarding the familial relationship, this is United States v. Heath. There the court found a legitimate expectation of privacy, rented by the defendant's cousin. I know my time is up, but I'll finish answering this question. And then United States v. Pollard, where this court found a legitimate expectation of privacy, where the defendant had been friends with the owner for years and had access without the owner's presence, had a key. And so here you don't just have a familial relationship, you also have the key. And so Mr. Ennis does have a reasonable expectation of privacy. He has standing, but he is not a resident of 930 Mountain. All right, you'll have your three minutes rebuttaled, but any further questions at this point? Judge Larson, Judge Wrigley. Thank you. Let's hear from the government. Good morning. Good morning. May it please the court. I'm Olivia Gaselli, and I'm here on behalf of the United States. The district court's decision in this matter should be affirmed because the search on March 8th of 2024 of the mail-in address by the United States Probation Office was supported by reasonable suspicion. They had reasonable suspicion to believe that Mr. Hernandez had been violating the residency requirement. Let me start with this. Do you think it's reasonable suspicion? Is that required by our cases? Is that an extension of our cases? Where do you get that standard from? At this point, the Sixth Circuit hasn't answered that question directly and on point. It's still been left open. This isn't a case that needs an answer to that question. I don't think, as you questioned counsel on the other side, that this is necessarily an appropriate case to answer. It hasn't been fully briefed. This wasn't an issue that was raised until the 28-J letter filed approximately a month ago. We would argue that it's been effectively waived and isn't necessarily appropriate for addressing simply because- It's probably a question that comes up somewhat frequently. Do you think it's something that the circuit needs guidance on? I think it's something that's percolating. Clearly, it's been addressed by the Fourth, Eighth, and Ninth Circuits. I think there's some case law out there in the Third Circuit. I think it's going to be raised eventually, but I don't think it's appropriate. Can I ask you why you think it should be reasonable suspicion rather than probable cause? Sure. I think there's some practical realities that are addressed nicely by the concurrence in Granberry. Actually, this court has adjacently addressed them in the U.S. v. Buckner in 1983 case. The practical realities of providing a supervisee with a higher standard of Fourth Amendment protections in a third-party residence than that supervisee would have in their own residence provides a perverse incentive to them. It allows and encourages them to effectively get a safe house. Find your girlfriend. Have her store your guns, your drugs. All you have to do is just show up once in a while enough to not make it a residence, and all of a sudden you have full Fourth Amendment protections as though you are not even a supervisee, as though you are a full-fledged, fully protected citizen expecting search warrant protections, Fourth Amendment protections in that location. It allows you to engage in any illicit, illegal activities that you would like with those full protections, whereas in your own home you do not have those protections because you are subject to those reasonable suspicion standards as a supervisee. That has consistently been held by this court and by the Supreme Court, U.S. v. Knights, that the government and the people have an interest in continuing to engage in those protections for the public to make sure that supervisees have those higher standards and that the public can be protected. Supervisees have been noted in U.S. v. Knights to be more inclined to recidivate and have a desire to conceal those illegal activities. So I think that engaging in that sort of analysis and those sort of conclusions and raising that bar to the probable cause standard is going to lead to that kind of a perverse incentive structure. Also, the terms of the supervised release which provide for reasonable suspicion really are intended to be as broad as possible, aren't they? Persons, property, house, papers. I mean, if I were going to write a list of things to say, okay, I want Fourth Amendment rights to the supervised release defendant to be all based on reasonable suspicion, I don't know how I could write it any better than that. I mean, it is intended to be broad, isn't it? Yes, and even in this case they include house residents. They include two different words, house residents.  For that specific reason and it's articulated. They set the standard as reasonable suspicion. The whole point is that defendants on supervised release have less rights. I mean, they've already been convicted and they're out on grace right now. Correct, Your Honor. Right. Yes, and again, I don't think that this case has been developed in the same way that would be appropriate. The parties haven't had the opportunity to brief both sides. We haven't had the opportunity to look at all of the developed case law in the various circuits to see what else is out there and to provide Your Honors the opportunity to really assess the situation. But given the real practical ramifications, it's the government's position that reasonable suspicion should continue to be the standard that's operated by the district courts. And regardless, in this case, there was reasonable suspicion and there was in fact probable cause to believe that Mr. Hernandez had been violating his residency requirements and that there was reasonable suspicion to believe that there were guns, drugs, or a variety of other violations that could be found at that mail-in address as executed by that probation search. So do you want to explain why you think you can meet the – it sounds to me like you're arguing you don't need to decide this probable cause versus reasonable suspicion because we have probable cause. And so why do you think you have probable cause as opposed to reasonable suspicion? Your Honor, I think that there's just a plethora of data in this particular case. Mr. Hernandez had been under supervision for over a year at this point when the search had been executed. There was the 90 days of GPS data, very extensive surveillance that had been done by the probation officer, Mike Gleason, demonstrating where he had been, when he had been, various places. We have all of the drug testing that had been ongoing for nine months. We have this really unfortunate domestic incident that occurred in February where the Lansing Police Department had been involved. And then we have not only a one-time statement by Mr. Hernandez to Lansing Police at that time, but we have the statement to Lansing Police that this is my home. We have the ring camera that the Lansing Police Department then reviewed where you see Mr. Hernandez telling HR, the woman involved, that this is my home. Attempts to trespass her. Then you have Mr. Hernandez report to the probation officer the next day, saying, hey, I had this run-in with law enforcement. Tells the probation officer I was at a friend's house and then went to my house, the mail-in address. That's three statements out of this one incident where Mr. Hernandez refers to the mail-in address as his own house. And then you have HR able to get to that home on her own. Both HR and Mr. Hernandez both say that they left that bar independently. She manages to know exactly where he lives. He's clearly receiving social guests at this location. That incident alone, I think, can get you to probable cause that he's violating the residency restrictions on that. And that's sort of the precipitating event to lead to this request for the search and what kind of rolls this into action for the probation office. And that's what leads to the search being approved and ultimately executed, leading to the seizure of the guns and the drugs and the eventual indictment, leading to the appeal here. So, Your Honors, I do think there's plenty of evidence here to support, regardless of what the standard would be. But I continue to believe that reasonable suspicion would be appropriate. And though the court at the district level did not consider the Bruin issue, it was not raised, I think that the court at this point should also reject Mr. Hernandez's argument that 922G1 is unconstitutional as applied or on its face. Mr. Hernandez's prior conviction is clearly considered dangerous. He has a possession with intent to distribute and a 924C. This court has held repeatedly that those are considered to be dangerous under that second bucket of categories in Williams. And nothing about the age of the conviction or his youthful status would preclude otherwise. Unless this court has any questions? I guess not. Thank you. Thank you very much. Three minutes rebuttal. Thank you, Your Honors. Firstly, on the 28J letter, we're more than happy to provide supplemental briefing if this court believes that that is necessary. Regarding the practical concerns that the government just noted, here, the potential constitutional violations of third parties necessitates a more rigorous standard. Otherwise, all private homes may be susceptible to a parolee search based on mere suspicion or a non-corroborated report that the parolee lives there. And getting into the safe house point and the practical concerns that the government has, this standard would only impose a minimal burden on law enforcement. That is because they have a plethora of information on the parolees, where they live. The detail is about the underlying arrest or detention. And Mr. Hernandez, here, is a perfect example. They monitored him. They added conditions throughout his supervised release. Added a search condition, added curfew conditions. They could have prohibited him from being at that home. So if there is some concern that there is a potential safe house, they could prohibit the parolee from being there. And this court also noted that in the United States v. Henry. And regarding the one-time statement, the government also fails to consider that it is natural to consider family members, residents, as their own, let alone an immediate family member's residence. And, again, it's important to put this statement in context. As he had just been assaulted, this person was just arrested for such assault. And then the government does not point to Granbury, a case that they cited approvingly. They say that there's probable cause. There is not probable cause. And that case, which they cited approvingly, confirms that. Probable cause is never found where a parolee officially reported at the address other than the one search, unless there was an affirmative and substantial basis that they were no longer living there. The government does not engage with that part of the totality of the circumstances analysis. And so here, there is not probable cause. It isn't a case like Payne where you can't just avoid the question on those grounds. And so, Your Honor, again, this case is about residents, Fourth Amendment. It's confirmed by the supervised release agreement. It says your property, your residence, confirmed by the probation officer's testimony. We didn't think anything else was going on here but a residency violation. And I also want to make a final point on the different standards. The government seems to conflate the probable cause standard with the reasonable suspicion standard. The probable cause standard would just be for residents. Once we've established that this is your residence, then regarding the alleged drug activity or the alleged firearms possession, that's still reasonable suspicion. And so the government seems to conflate those standards. The standard there, and it's simply just that first question. Is this probable cause? If the search had been done at his approved address, then we could go on to whether there was reasonable suspicion about the firearms possession, about the alleged drug activity. But that is not how such a standard would work. And so my time is running up here. We ask this court to reverse the district court's denial of the motion to suppress. Thank you very much. Further questions? No. All right. The court notes that the defense counsel was appointed under the Criminal Justice Act, and I want to thank the University of Michigan Law School Federal Appellate Litigation Clinic for taking the case, and Mr. Aguilar, thank you for your arguments today. We'll take the case under submission.